## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JULABO USA, INC.,** | **Case No. 5:19-cv-01412-JDW** |
| *Plaintiff,* | |
| v. | |
| **MARKUS GERHARD JUCHHEIM** | |
| *Defendant* | |

## MEMORANDUM

Sometimes, equity demands a do-over. An opponent coughs during a backswing on the golf course. A recipe doesn't turn out right. Or someone gives away an answer during a game of Trivial Pursuit. This is one of those cases. Julabo USA, Inc. sued Markus Juchheim ("Markus") for violating a Shareholder Agreement that includes an arbitration clause. Markus decided not to invoke the clause, and the parties litigated the case until the Court denied summary judgment. Then, Julabo initiated an arbitration arising out of the same facts. When it did, it gave Markus a do-over on his decision. He decided to invoke the arbitration clause, and the Court will give effect to that choice by staying this case and compelling Julabo to arbitrate all of its claims in a single forum.

## I.     BACKGROUND

### A.     History Of This Case

Julabo is a Pennsylvania company engaged in the development, manufacture, and sale of precision temperature-control equipment. Markus and Ralph Juchheim ("Ralph") are brothers and own equal shares of Julabo. Markus is also the sole

managing director of Julabo GmbH ("Julabo Germany"), a German entity engaged in the same business.

Markus, Ralph, and Julabo are parties to a Shareholders Agreement dated December 1, 2011. The Shareholders Agreement includes covenants from Markus and Ralph that neither will compete, directly or indirectly, with Julabo in North America while they own Julabo shares (or for two years after). The Shareholders Agreement also provides that the "shareholders or the company shall have the right to demand that any controversy or claim arising out of or related to this agreement … or the breach thereof, shall be settled by arbitration." (ECF No. 1 at Ex. A, § 17.IV.)

Julabo claims that Markus violated that non-compete provision by allowing or causing Julabo Germany to sell products to European distributors that, in turn, resold equipment in North America. So, on April 3, 2019, Julabo filed this lawsuit seeking $5 million in damages and an injunction to prevent Markus from violating the covenant not to compete. Markus filed a motion to dismiss, which the Court denied. Markus then filed an answer and a Third Party Complaint that asserted derivative claims against Ralph and another Julabo employee.

The Parties engaged in extensive discovery over more than nine months, including written discovery, depositions, and requests for foreign judicial assistance in Germany. On July 17, 2020, all Parties filed motions for summary judgment. In December 2020, the Court granted those motions as to Markus's third-party claims but denied them as to Julabo's claims. Throughout the pretrial proceedings, no one mentioned, let alone invoked, the arbitration clause in the Shareholders Agreement.

### B.   The ICDR Arbitration

On February 7, 2021, Julabo initiated arbitration proceedings against Markus before the International Center for Dispute Resolution. Like the Complaint in this case, Julabo's Notice Of Arbitration asserts that Markus breached the Shareholders Agreement by "causing or permitting" Julabo Germany to sell Julabo-branded products "for use in North America." (ECF No. 64-4 at ¶ 31.) The Notice Of Arbitration relies on discovery that Julabo took in this case. In the arbitration proceeding, Julabo seeks an injunction to remove Markus as director of Julabo Germany, but it does not seek damages, though it asserts it has suffered $5,000,000 because of Markus's alleged breaches.  (*Id.* at ¶ 3.)  On May 3, 2021, Markus moved to compel arbitration of this case. That Motion is ripe for decision.

## II.   LEGAL STANDARD

Where, as here, a complaint demonstrates that certain of a party's claims are subject to an enforceable arbitration clause, a court should consider the motion under a Rule 12(b)(6) discovery standard, unless the nonmoving party provides "additional facts sufficient to place the agreement to arbitrate in issue." *Silfee v. Automatic Data Processing*, 696 F. App'x 576, 578 (3d Cir. 2017). In the context of a motion to compel arbitration, Rule 12(b)(6) requires a court to determine whether there is any possible reading of an arbitration agreement that would relieve a non-moving party of an obligation to arbitrate. *See Wise Foods, Inc. v. UFCW Health and Welfare Fund of N.E. Pa.*, Civ. A. No. 21-1261, 2021 WL 1253546, at * 3 (E.D. Pa. Apr. 5, 2021). The Court examines the complaint in its entirety, as well as other sources courts

ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. *See id.* (quoting *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007)).

## III.   DISCUSSION

Under the Federal Arbitration Act, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "federal policy favoring arbitration," and that policy means that courts must "resolve any doubts concerning the scope of arbitrable issues . . . in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Grp.*, 460 U.S. 1, 24-25 (1983).

Under Section 3 of the FAA, if a suit is brought on an issue referable to arbitration, then the court hearing the case "**shall** . . . stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement …." 9 U.S.C. § 3 (emphasis added); *see also Lloyd v. Hovensa, LLC*, 369 F.3d 263, 269 (3d Cir. 2004) ("[T]he statute clearly states, without exception, that whenever suit is brought on an arbitrable claim, the Court 'shall' upon application stay the litigation until arbitration has been concluded."). An issue is subject to arbitration if there is a valid arbitration agreement between the parties and the issue is within the scope of that agreement. *See Sorathia v. Fidato Partners, LLC*, 483 F. Supp.3d 266, 273 (E.D. Pa. 2020). "Default" includes waiver of the right to arbitrate the issue at hand. *See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 218, 48 V.I. 1034, 1048 (3d Cir. 2007).

If a party refuses to arbitrate, then Section 4 of the FAA mandates that the court hearing the case stay the case and refer it to arbitration. *See* 9 U.S.C. § 4; *see also Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

The Shareholders Agreement contains a valid, enforceable arbitration agreement, and the issues in this case fall within the scope of that agreement. Julabo does not argue otherwise. Instead, Julabo argues that Markus waived his right to arbitrate by litigating this case. Litigation conduct can effect a waiver of a right to arbitrate. The Third Circuit has set forth several factors for courts to consider in evaluating a waiver argument: (1) the timeliness or lack thereof of a motion to arbitrate; (2) the degree to which the party seeking to compel arbitration has contested the merits of its opponent's claims; (3) whether that party has informed its adversary of the intention to seek arbitration even if it has not yet filed a motion; (4) the extent of the party's non-merits motion practice; (5) the party's assent to the trial court's pretrial orders; and (6) the extent to which both parties have engaged in discovery. *See Hoxworth v. Blinder, Robinson & Co., Inc.*, 980 F.2d 912, 926-27 (3d Cir. 1992); *see also Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 222 (3d Cir. 2007). A court should only find a waiver "where the demand for arbitration came long after the suit commenced and when both parties had engaged in extensive discovery." *Ehleither*, 482 F.3d at 222-23 (cleaned up). Prejudice is the "touchstone" for determining waiver. *Id.* at 222.

Markus waited almost two years to seek to arbitrate this case; he litigated the merits of his defenses and his counterclaim;and he engaged in extensive discovery.

That likely waived his right to arbitrate. But a waiver does not have to be forever. If a party to litigation acts in a way that alters the nature of the proceedings, that action could revive its opponent's right to arbitrate the dispute. *See Envirex, Inc. v. K.H. Schussler Fur Umvelttechnik GMBH*, 832 F. Supp. 1293, 1296 (E.D. Wisc. 1993) (amended complaint that made new allegations revived previously waived right to arbitrate); *see also Gilmore v. Shearson/Am. Express, Inc.*, 811 F.2d 108, 113 (2d Cir. 1983) (amended pleading that changes the scope of claims in case could nullify earlier waiver of right to arbitrate). That's what happened here.

At the outset of this case, Markus had to decide whether to defend the case in court or move it to arbitration. He chose court, and the case proceeded. If nothing else had happened, that would have been the end of it. But in February 2021, Julabo initiated the ICDR Arbitration. That filing was a fundamental change to the posture of the dispute. Now, Markus faced the possibility of proceeding in court and in a parallel arbitration. Julabo created that situation by initiating the ICDR Arbitration. In doing so, Julabo gave Markus had an opportunity to revisit his decision about arbitrating this case. In effect, Julabo's decision to initiate the arbitration waived Markus's waiver of arbitration.

That conclusion is consistent with the law of waiver. In most contexts, a waiver only occurs if it is knowing, voluntary, and intelligent. *See Col. v. Spring*, 479 U.S. 564, 572 (1987); *Wilmington Sav. Fund Society, fsb v. Peter K.*, Civ. A. No. 06-cv-1945, 2006 WL 3052857, at * 1 (E.D. Pa. Oct. 23, 2006). When Markus chose to litigate this case, he did not know that he would face a parallel arbitration proceeding. Therefore,

his decision to waive arbitration and proceed on two tracks, one in arbitration and one in court, was not knowing or intelligent.

Julabo argues that the ICDR Arbitration is different from this case because Julabo seeks different relief in that forum. But Julabo acknowledges that the underlying facts are the same. So, as long as Julabo **could** seek the same relief in arbitration that it seeks here, the difference in remedies does not change the Court's analysis. Julabo is free to seek to amend its arbitration petition to seek damages in that proceeding. *See* ICDR IDRP ARB R Art. 10.

Because Julabo's initiation of the ICDR Arbitration reset the clock on Markus's right to arbitrate, the Court must consider whether Markus did anything to waive his right to arbitrate since Julabo initiated that arbitration. He did not. His motion came approximately three months after Julabo initiated the arbitration. No party engaged in any discovery during that time. And, because there is no trial date in this case, no party should have been preparing for trial. There is therefore no prejudice from sending this case to an arbitration that Julabo initiated.

## IV.    CONCLUSION

Julabo does not dispute that this case falls within the scope of the arbitration agreement in the Shareholders Agreement. When Julabo initiated arbitration, it hit the reset button on Markus's decision to invoke that arbitration clause. The FAA requires that the Court give effect to his choice. The Court will therefore grant Markus's Motion and stay this case pending resolution of the ICDR Arbitration. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
_____
**JOSHUA D. WOLSON, J.**

June 9, 2021